Next case we have Yellow Book Sales v. Patricia Dennis & Amanda Barrett with Mr. Magg and Mr. Bozart. Counsel. Thank you, Your Honor. May it please the Court. Counsel. My name is Thomas Magg and I represent the defendant-slash-third-party plaintiffs Patricia Dennis & Amanda Barrett. Ninety percent-plus of this case can be resolved around two interrelated questions. The first of the two is, does the Revolving Charge Billing Act provide a private right of action? If the answer to that question is yes, this Court will be bound to reverse almost all of the Circuit Court's rulings in this case. The second major part of the question is, if the Revolving Charge Billing Act does not provide a private right of action, can a claim or a violation of it be brought as an unjust enrichment account or an illegal consumer product? Again, if the answer to that question is yes, most of what the Circuit Court did in this case must be reversed and the case be remanded. So how do you distinguish Stewart v. Amico that says it's an affirmative defense and not a private cause of action? Stewart is very easily distinguishable, not on the facts but on the law. I can see that there are many factual similarities with Stewart v. Amico in this case. Stewart v. Amico, though, is not binding as precedent on this case as it is from another judicial district. Clearly, Your Honors can consider it, might find it persuasive, might not, but it is not binding on you. You can't overrule it. It's out there from a sister district. It is wrongly decided because the Illinois Supreme Court, and the cases you cited in my brief, has set forth four standards to determine whether or not a private right of action is implied under a statute. None of those four factors were considered by the Stewart Court. Instead, the Stewart Court said there's no private right of action because we find it's not an elaborately drawn statute. Being elaborately drawn or not is not one of the four factors set forth by the Illinois Supreme Court. Admittedly, the cases I've cited from the Illinois Supreme Court substantially postdate Stewart, but that's not a reason to disregard the teachings of the Illinois Supreme Court. That's a reason to go back and look at Stewart and see that Stewart is wrongly decided in light of the more recent Illinois Supreme Court decisions, both a higher authority and a more recent authority. The four factors set forth by the Illinois Supreme Court, which again do not include the fact that the statute is elaborately drawn, include whether or not plaintiffs were members of the class for whose benefit the statute was drafted. Well, in this case, the answer is clearly yes, they are. In this case, my clients are consumers who purchased the Yellow Page Advertising and received the bill regulated by this statute, and it's clearly intended to protect them. Otherwise, they wouldn't even have standing to use it as an affirmative defense. Second, the plaintiff's injury is the type of injury that the statute was designed to prevent. Again, clearly the statute is designed to regulate the contents of the bill sent to the person who purchased my client. The injury that the statute is designed to prevent is exactly the type of injury that we're suing them, i.e. the statute is designed to regulate how charges of interest or other non-cash payoff charges are presented on the bill in order to prevent people from being essentially taken advantage of and paying more over the life of the revolving charge than they can just pay it off. Third, that the private right of action is consistent with the purpose of the statute. The purpose of the statute, again, is to regulate the contents of these bills so that persons who purchase whatever on revolving charge accounts can know, hey, this is how much I need to pay it off, this is how much I'm getting dinged on interest, carrying charges, the like. If the statute can only be used as a defense, it is inconsistent with the purpose of the statute because it actually encourages a violation of the statute to wit. If you can only use the statute as a defense and a company that violates the statute doesn't have to give back any of the ill-gotten extra charges, that actually encourages the companies to violate the statute, hide the information on their bills or not even put it on there in the first place, knowing that if they get called on it, they've just lost potential future interest from this one particular customer, but everybody else who for however long has been paying these charges. Counsel, we haven't, or at least I haven't had a chance to look at the contracts that were signed. Was there two contracts signed? There are multiple contracts over some years, but they are all with either Patricia Dennis, Amanda Moret, or both. I was under the impression that this was for two years, like 2004 to 2005 and 2006 to 2007. There are several years. Okay. And I haven't had a chance to look at the actual contracts. I don't know whether they were attached to any of your old briefs or not. They are attached to the original complaint. Okay. Can you tell me, based upon those contracts, why this is a revolving charge account? It's a revolving charge account. As opposed to any other sales contract? A simple sales contract. This could be a simple sales contract if my clients had simply paid the whole thing up front. They could have done that and then they wouldn't have had a revolving charge account. What makes this a revolving charge account is that they didn't have money to pay for all of the Yellow Pages advertising when they took the ads out. And so, like apparently most persons take out the Yellow Pages ads, Yellow Pages opens up a credit account for them, bills them every month. They pay some portion of it every month. And when the next year's advertising comes out, the process repeats itself. So, yes, they could have simply paid it off and incurred no interest, no carrying charges, or the like. But instead, they did it on credit. Kind of like, Your Honor, if you bought gas on a credit card, you can pay it off at the end of the month if you want to, or you can pay some portion of it and it just keeps revolving down the road. As long as I don't go over whatever credit limit was established by the credit card company. Correct. Now, was there a credit limit established in this particular case here? I don't know if the record speaks to that, but there is no allegation that any credit limit was surpassed. So the amount was the amount that was what was contained in the original contract there. I guess I'm having a hard time figuring out how this fits within the theory, the basis of a revolving charge account. It seems like those are talking about regular credit card accounts where you have a limit of X number of hundreds or thousands of dollars that you can charge at any various retail establishments. As long as you don't go over that limit of credit that they're giving you, you're okay. That may be something the circuit court needs to take up if and when this case gets remanded, but it's important to remember the procedural posture that the allegations are in. The procedural posture that these revolving charge accounts are in is these were dismissed or suspended in the state of cause of action. Okay. It is expressed in the plan, in the counter plans, that this is a revolving charge account. Okay. So you say that particular concern or issue is premature, right? It is premature at this point. But, again, a private right of action is consistent with the purpose of the statute because if the statute does not allow a private right of action, again, the company or the creditor, as it were, can simply retain their milk out of benefits with absolute impunity, which actually encourages a violation of the act because if Stewart is correctly decided, they know they can get away with it with only a minimal risk on an individual consumer's account. The fourth element is necessary to provide an adequate remedy for a violation of the statute. Well, there are no remedies for a violation of the statute if Stewart is correctly decided. If Stewart is correctly decided, the only thing the statute can be used for is if the creditor actually sues the customer that that customer, if they're aware of the statute, can say, well, we don't really have to pay back the interest in carrying charges and the like. But if it's brought as a simple contract action, it's probably not even going to be brought up in the first place because the court is very likely to find it's a contract action. The contract allows for interest carrying charges and the like. So there's actually no remedy at all in the statute if Stewart is decided, and the only way that the statute really has any teeth is if there's a remedy. Furthermore, I would note that if you carefully look at both the original counterclaim and the amended counterclaim, that the original counterclaim does not expressly state it's being brought directly under the statute, which is apparently what was being done with Stewart. Admittedly, the statute's cited in there. The statute is setting forth the standard the care requires, but the original counterclaim pleads an unjust enrichment. Stewart never addressed the issue of whether a violation of the revolving chart bill as an unjust enrichment. The amended counterclaim pleads two separate violations of the Consumer Fraud Act, which in turn then rely on the revolving chart bill. The amended counterclaim also expressly adopts and incorporates by reference the original counterclaim, so that dismissal order is not waived as would be the normal case when a complaint and a counterclaim is amended. So the end result is the three counts on appeal here are not brought directly under the revolving chart bill again, as was the case with Stewart, but instead are brought either under the common law or under a separate statute, the Consumer Fraud Act. It's very well settled that the Consumer Fraud Act allows private rights of action. Unjust enrichment counts are very common under the common law and have allowed private rights of action for unjust enrichment for centuries. Therefore, this court, because Stewart does not take into account the four elements set forth by the Illinois Supreme Court to infer a private right of action, and also because this case is distinguishable from Stewart because Stewart brought it directly under the Revolving Chart Billing Act, and this case brings the counts either under unjust enrichment or under the Consumer Fraud Act. This court should disregard Stewart, but if this court is even inclined to follow Stewart, find that it's inapplicable because the counts are not brought directly under the statute. Now, there's other elements and arguments made in the brief concerning other points which took place. After the circuit court dismissed the counterclaims, the circuit court sent this case back to the Madison County Court Annexed Arbitration System, which under both the Illinois Supreme Court rules and the local rules only apply to cases that have dollar amounts of either less than $50,000 or $50,000 or less. If this court finds that the plaintiff has stated the cause of action in the counterclaims, everything after that, where it was transferred back to the arbitration docket, should be vacated for want of jurisdiction. Quite simply, the arbitration docket doesn't have the subject matter jurisdiction to hear any disputes where any portion of the dispute has a claim that it's worth in excess of $50,000. If so facto, the arbitration award should be vacated. However, whether or not this court finds that the Revolving Chart Billing Act either directly or as a brought as some other cause of action provides a private right of action, the Supreme Court Rule 90C, I believe, sets forth a time period to submit a packet of information for use at the arbitration. That time period was not complied with. The reason that that time period was not complied with was the identical reason why the defendants in this case did not timely reject the arbitration award. Missed calendar of the time period, it's all due. Literally the last business day before the arbitration, the Circuit Court allowed the late, untimely Rule 90C packet of the plaintiff. You're admitting that you didn't reject the arbitration award timely, but you should be excused because the trial court let the other side file something at the last minute. I'm making two points on that. That's one of the points. The other point is that the entire arbitration process was tainted because the trial court allowed the late 90C packet literally the last business day before the arbitration. When my client was actually reliant on the fact that without a timely Rule 90C packet, Yellow Book would have to either produce no evidence or produce witnesses who authenticate everything which would allow cross-examination. Thereby, my client was prejudiced at the arbitration because of the untimely Rule 90C packet. But even if the Circuit Court had the discretion to do that, the court abused its discretion by not allowing the untimely rejection of the arbitration award, which was untimely for the identical reason that the plaintiff submitted his late Rule 90C packet. What do you rely that the trial court had discretion to allow a late filing on the rejection of the arbitration? Well, judgment had not even been entered at the point that the rejection had been filed. So it's not discretion. You're saying the judgment had not been entered. Judgment had not been entered. At least the local rules set up a time period to file a rejection of an arbitration award within 30 days of the arbitration award being entered. And how it's practically done is it's set on the court's docket for entry of judgment, usually about 35 to 40 days thereafter in the court. But the court wouldn't enter judgment until they realized there was nobody rejecting it. There would be no reason to enter judgment before the 30 days expired. Right, and I don't think the court would have been allowed to enter judgment. Right, but you're saying after the 30 days the court has the discretion to extend the 30 days? Yes. Under what theory? Under what case or what rule? I believe the defendant has actually cited a case in their brief that sets forth that the time period is not fixed in stone. The court does have some discretion, but sets forth the standards of what discretion is. And it's simply my position that the discretion that the circuit court had to allow the late Rule 90C packet is the identical discretion it had to allow the late rejection. And what's good for the goose is good for the gander. If they can file the late Rule 90C packet under the same argument that I filed the late rejection. And our standard of review on that is abuse of discretion. I believe it would be abuse of discretion to the extent that there is discretion. If there is discretion. If there is discretion, yes. Unless the court has any questions, I'll simply address them in rebuttal. Thank you, counsel. Thank you. Hi. This is the court. Counsel. I think that's where you started your brief. Could you comment on that, whether the court has a discretion to extend that period? I started at a different place than the defendants did, certainly. And I think one of the problems with that last bit of argument that we just heard from counsel is I don't think that they appeal that order. I think probably the one order that they didn't appeal, and to be sure, they appealed almost everything. But I think the one order that they didn't appeal was the denial of the late rejection. I believe that the trial court does have discretion. And the case law says that they can allow late rejection for good cause shown. And the case law says that inadvertence is not good cause. The problem with pretty much the entirety of counsel's argument is he starts from the wrong end. What we did in this case is we had an arbitration. The arbitration went from beginning to end, my clients won, and they obtained a judgment. The judgment was not rejected. He's asking you to sit as an appellate court over an arbitration process, which isn't proper. The recourse for an arbitration that counsel may not like is to reject that arbitration. And that's automatic. All they have to do is pay their $200 fee, and it doesn't matter why they don't like it. They go to trial. But that's the only recourse they get because you don't have a record of what happened. As a matter of fact, counsel tried to file a bystander report. I objected to that, and that was never certified by the circuit court. The circuit court wasn't there. He couldn't say what happened at that arbitration. So really, all of the issues that counsel started at the end with are the front and center issues, and it shouldn't even be before this court. He alleges that there was a violation of Rule 222 that prejudiced him in front of the arbitration. He alleges that the 90C packet was late, and that prejudiced him. He alleges that the arbitrators ruled without sufficient evidence, and that prejudices him. All of those things, however, are not revealed. His recourse was to reject it, and he didn't do that. Now, it creates a bigger problem, and if I can step back just a second, what we have to look at here is exactly the situation that we're talking about. My client, Yellow Book, provides print advertisements for all manners of business. In this case, Mr. Mang's client is two lawyers who ran a law practice. There is admitted in the answer that the contract attached appears to be a valid contract. It's a genuine contract that the defendants received the print advertisement that they contracted for, that they did not pay for the print advertisement that they contracted for, at least for the bill that's attached to the complaint. And they also agree that they owe money. They just deny that they owe the entire amount of money. I guess that's trying to deny joint sever liability, but what they don't deny is that they got what they paid for, or they got the service and they didn't pay for it. So that's what went forward in the arbitration. And one of the other things that they raise at the arbitration, or that is also, I believe, precluded from review because of the arbitration, is he alleges an improper denial of the summary judgment. He raised a summary judgment issue on which party was a proper party on the complaint side to the contract. That was denied by Judge Mendelson and proceeded to trial. Again, I don't think that's reviewable because he should have rejected the award. If you think about it, what happened was, well, for one, it's his burden to put in what evidence needs to be in the record so that you can say that the judge made a wrong finding. Absent that evidence, it's presumed that the judge was correct. And the only thing that's in the record on that is the judge's order. There was not a transcript of that hearing. I know what the judge considered because I was there, but it's not in the record. But I think more importantly is that same matter went before the arbitrators, and the arbitrators obviously didn't dump it or else I wouldn't be in the position that I am as an affilee. Again, because the arbitrators made a finding, necessarily, that that summary judgment wasn't proper, or at least the factual basis for it wasn't proper, I don't think it should be reviewable because his proper recourse is to reject, go to trial, and then we come here. In essence, what we're doing is because of the late rejection of the award, counsel is putting this court, and honestly I don't know of another case where this has been presented, the direct appeal of an arbitration. What you find in the appellate process after an arbitration is the consideration of whether the late rejection was proper, those types of things. So really, I don't have a case to cite to you to say you can't do it other than the rule. In case law, we say your only recourse is to reject it, and it's an automatic right. So we believe that all of those claims the plaintiff cited fail. Also, his contention that the counterclaim is the linchpin and should send everything back, I think he has that backwards also because the issue there, he made a counterclaim premised on this revolving charge billing. He also made an affirmative defense on the revolving charge billing. That affirmative defense is in his answer and went to the arbitrators. They obviously rejected it, whether they rejected it because they didn't like his evidence, whether they rejected it because he didn't present evidence, whether he waived it, it doesn't matter. Again, at this point, we believe it's law of the case or res judicata because they made a finding, it wasn't rejected, and it's not repealed by this court. So for whatever reason they decided not to go with him on that, maybe they thought, Your Honor, like Judge Sloan was talking about, this revolving charge billing act just doesn't apply. Maybe they made that finding. Maybe they didn't like the evidence. We don't know, and that's not something that a court sitting in this position can review. So we don't think that that should even be before the court because it's already decided and it's too late. This was really the kitchen sink type approach to this appeal. One of the things he even says in his brief is that the arbitrators didn't have jurisdiction. There's no site for that, not surprisingly, but clearly the counterclaim was under $50,000. The affirmative defense going against that counterclaim was both properly under the Illinois Supreme Court rules and Madison County rules before the arbitration panel. That was decided. So we believe that for those reasons, all of that, because of the posture that the case is in, is not reviewable. Now, when you look at the actual essence of it, and I would like to talk about that a little bit, I think the problem that Plaintiff has, and this goes to both the statute, whether he's talking about unjust enrichment, consumer fraud, the problem is he simply has no injury. There's no dispute about the amounts that were charged in the contract. There's no dispute that the contract provided for the very amount that was requested. The only complaint is that the bill that they sent requesting the amount owed didn't ask for it the right way. So we have this two-page statute, and actually I cited, quoted on page one and two of my brief in its entirety. It's also, I have the annotations attached at C67-71 of the record. But this two-page statute really has not been determined to not only provide a private right of action. The Stewart Court also says it doesn't create liability. It's a shield. It's not a sword. And that's clear from the reading of the statute. And then I think you get into the case of it's not even applicable to this type of situation. The issue of its applicability was raised. It was raised in our second motion to dismiss, which was the motion to dismiss the amended complaint or the amended counterclaim. And in that case, we cite the revolving credit definition from the Illinois Interest Act, which is 815-205-5.1. I'm sorry, 4.1. I'm not going to read the whole thing, but it's at C89. We quote it in our underlying papers. But it talks about a lender establishing an amount that time to time makes loans in support of that amount, accepts payments. There's a carry-in balance, a billing cycle, and that amount increases and decreases over time. There is a case called Johnson v. Sears, cited in our brief. It's 303 Northeast 2nd, 627, which addresses this exact point. It says a simple purchase on credit is not a revolving credit transaction. It looks at the definition of revolving credit, and it looks at exactly something, this situation. When you pay for it over time, that's not revolving. Revolving is when you have a balance. You make payments. That balance increases and decreases. The legislative history behind 4.1 is also cited in our brief. I'm sorry, in the record at C90. That supports that contention as well. I disagree with counsel that that issue was not right before the court because we made the argument. I believe the court considered it, and this court can consider it. I don't know that the court below dismissed on that lack of standing ground, but certainly it was before the court. Really, I think what the court dismissed on was the Stewart case. The court looked at the Stewart case, and actually there's some back and forth in the record or in the report of proceedings where Judge Hillel was questioning counsel about injury in their theory. I think it's a combination of really the Stewart case and that he just didn't see it here is the reason why it was dismissed. Stewart is good law. It's the only case addressing this statute, and it's been on the books for 30 years. That's because it was correctly decided back then. The analysis that was given by Stewart is exactly what we're looking at here. It states that there's no express or implied right of action, and secondly, it says that it creates no liability. It is a shield, not a sword. It is an affirmative defense, and that is how Judge Hillel let the defendants in this case use it. Otherwise, you get situations exactly like this one where there's no allegation that my clients sought to deceive them by taking more money than they owed. There's no allegation that they are being asked to repay anything than what they agreed to in the contract. It's admitted that the amounts requested are what his two attorney clients agreed to, but the liability comes in under counsel's theory because we asked for it the wrong way. So if we wouldn't have sent a bill at all and just called them up or waited for them to pay, they wouldn't be able to sue us for a class action, which is what they want to do. This is a manufactured claim in attempting to create liability where none exists. The Stewart court noted that the plaintiff in that case, plaintiffs because it was consolidated cases, were not misled, overcharged, or suffered any actual damage. That is exactly the case that we have here. At the report of proceedings, page 26 through 29, counsel and Judge Hillel have a back and forth, and I'm not going to go through the entire thing verbatim, but it's extremely interesting. It may even be almost comical if it wasn't costing my clients so much money to defend it. But the court asked, how did they violate the consumer fraud act? And counsel responds two ways. Again, this is not exactly a quote. Because of the contents of the bills, what was due was only the cash price. The court asked, no interest? Counsel says, no interest. The court responds, so in essence, your claim is they asked for interests they weren't entitled to. Counsel responds, well, assuming that the correct parties were named in the contract, the contract standing alone does give rise to the amounts of interest. So it's not the amount of interest that is the basis of your claim. No, that's not the basis of my claim. It's the bill. The bill did not comport with the revolving charge act. A little bit later on, I think we just went in a big circle, counsel. You told me that they asked for interests that they weren't entitled to. I heard you say that, didn't I? Did I misunderstand you? Counsel says, I think that's accurate. They weren't entitled to it under the revolving charge billing act. And I interjected, because we asked for it the wrong way. We were entitled to it under the contract. We just asked for it the wrong way, and I don't think that that states a cause for consumer fraud. The court asked, is that accurate, counsel? Defense counsel responds, I think that's an accurate statement. Where is that in the record again, counsel? That's report of proceedings, page 26 through 29, and I believe that was the November ‑‑ I'm sorry. That was the February 28th, 08 motion to dismiss the amended power bill in front of Judge Sheldon. So what we have is a situation where the judge just isn't seeing it. And he looks for where is this injury, and he quite frankly found the same thing that the steward court found. These amounts are owed. And it's not like they're taking something that didn't belong to them. If they don't do it right, if they don't bill it right, if this is a revolving credit transaction, which we don't believe it is, then there's a defense. And if they end up paying it, it's not like they're getting money stolen. It's money that they owe anyway. We believe that Stewart was correctly decided, and counsel wants to point you to the Supreme Court case of DeRosa, which was decided in 2004. Stewart was decided in 1979. Initially, we believe that the issues raised by counsel in their first complaint, first counterclaim, rather, since they amended it, and anything that was not contained in the amended complaint, amended counterclaim, is the law. It's gone. But even going through the DeRosa standards, we don't believe that it creates a private right of action. One, we don't believe that these parties are members of the class that the revolving credit billing act is designed to protect, simply because this is not a revolving credit billing claim. Two, the plaintiff's injury was one the statute was designed to prevent. The statute was not designed to prevent an injury of somebody paying money that they were supposed to pay. What it's designed to do is to provide a defense, to allow someone to say, if you don't ask for it the right way, I don't have to pay, not to go back for 10 years, as counsel wants to do in this case. There is no indication of the legislative intent of the revolving credit billing act. That's what Stewart said, and I think that fails Prompt 3. And then if you look at Prompt 4, that an applied right of action is necessary to provide an adequate remedy. DeRosa states, only in cases where the statute would be ineffective, unless an applied right of action is imposed, will we do so. Here, the statute's not ineffective. It's an affirmative defense. That's how it's used. That's how it was supposed to be used. With all respect to counsel, this guy isn't falling here. His clients are not out any money, in fact they haven't paid anything yet, as it is, but they aren't out any money that they don't owe. The statute isn't encouraging bad acts. His two clients were charged exactly to the penny what they agreed to pay. No deception, no bad act. And the court should not create a new cause of action to right a wrong that doesn't exist. I think for the same reasons the ICFA claims fail. We put in our briefs about the 2F claim and why that's not appropriate. 2F, we believe, necessitates a prior finding of a civil or criminal violation. That doesn't happen here. The Lanier Court, which is an Illinois Supreme Court case, is in the concurrence at 114 Illinois 2nd 1, states that, as well as the Sears v. Smith case, which is in our brief. I think the one thing that this court can review is the denial of the correction of the award under 92D. The defendant puts in his brief that the judge found that it didn't have jurisdiction to do that. That's not what the judge found. The judge is very clear, and this is the record at 183 and 184. He found that the types of things the defendant was asking him to do to make findings that the arbitrators didn't have enough evidence to do certain things, to make findings that the arbitrators could not find joint civil liability. Those are not things that 92D is allowed to do. Since my time is up, I would just ask that the order be affirmed on one of the many, many bases. Thank you, counsel. May I rebuttal, sir? Thank you, Your Honor. Mr. May, there was an order entered on February 6, 2009, by the circuit court, granting a motion to reconsider the grant of the late filing of the rejection. Yes. Okay. You don't mention that order in your notice of appeal, and I don't believe you mentioned that order in your initial brief. I believe that's correct. His point is you didn't appeal that. That particular order, I agree. The point of my argument where I referenced that before was referencing the court's use of discretion in allowing the rule-making seat back in the late filing. I know, but all of that would be moot, allowing the entry of the late packet if you had rejected the award. It would have started over. I don't know that it would have been. It might have been moot, but the fact that the award was not rejected, I do not believe that it was possible. Okay. You don't think that failing to appeal that February 6 order limits our jurisdiction? Absolutely not. For instance, the arbitrators, quite obviously, did not consider whether or not the Provolving Charge Billing Act, either directly or as part of something else, allowed for private write-of-action. They couldn't have considered that. Those counts were already dismissed. Right. I would also note that Judge Hillel himself, the record at page 38, when I'm asking him to certify the dismissal of the counts under Rule 304 for appeal, states, well, I'm not going to certify it to go up. I think it's clear it's not something where I think there's a great deal of confusion and so on and so forth. You'll have a chance to get it reviewed after this goes to the AR docket. It's not going to take a long time, so I'm going to deny your motion for certification. Meaning it was reviewable after a final order of the court regarding the arbitration, which was the rejection with a reconsideration on February 6th. That's the final order. And the judgment that was entered following arbitration was on the amounts awarded under the original complaint, not- If you had rejected it, you'd have gone back and won or lost in arbitration. You wouldn't have got your issues decided on what you really filed the counterclaim for. Correct. Even if you had a positive verdict, you would have probably still appealed on the counts that were dismissed. Win, lose, or draw, you probably would have- You would have. Yes. And that's what he meant by saying that's when you'll get it reviewed after the arbitration is complete. Regardless, the counts were not in front of the arbitrators. Right. A judgment entered without jurisdiction, i.e., subject matter jurisdiction or even personal, I suppose, although that's not an issue, is void. If I have stated a cause of action in my counterclaims, the case never should have gone to the arbitrators in the first place, meaning everything that took place after that, including the judgment on the arbitration, is erroneous and the judgment is void of an issue. I would also like to address a point made by counsel on his argument, and that is that my clients haven't paid anything yet. They've got no damages. Two points. One, if you look at Exhibit B to their own complaint, it shows amounts paid by my clients. Second, the counterclaims expressly plead damages. They were dismissed in a 615 motion. This court cannot take the position of determining whether or not those are true or not. The arbitrators couldn't and didn't determine whether those allegations were true or not. This is a pleading appeal as to the counterclaims. Thank you, Mr. Chairman. Thank you, gentlemen, for your audience today.